*Ex Parte* ADOLPH PRICHA.

Opinion filed Nov. 4, 1915.

Petition for re-hearing denied Dec. 15, 1915.

1. While the provision in Section 16 of Article 3 of the Constitution is mandatory and of as much binding force upon the Legislature and upon the courts as any other provision in that instrument and while it is the duty of the courts to declare legislative enactments void, when questioned, that are clearly non-compliant with its requirements, still the courts in construing the acts of the legislative branch of the government should always apply a liberal rule, and refuse to declare its action void, except in clear cases that are free from every reasonable doubt.

2. It is a sufficient compliance with Section 16 of Article 3 of the Constitution if the subject is expressed in the title to the act, the matters properly connected with such subject not being required to be expressed in the title.

3. If the title to the act fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill it is all that is necessary. The title need not be an index to the contents of the bill or act.

4. Under the title of "An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer, and prescribing a penalty for the violation of certain of its provisions, and repealing laws in conflict herewith" the legislature may phohibit the sale of such liquors, wines or beer, in counties where the sale of the same is allowed by law, in less quantities than one-half of a pint, and may further prohibit such sale, unless such liquors, wines or beer are contained in securely sealed receptacles.

5. Under the title of an "Act to regulate the sale or furnishing of intoxicating liquors, wines or beer, and prescribing a penalty for the violation of certain of its provisions, and repealing laws in conflict herewith," the legislature may make the following section a portion of such act, without violating the provisions of Section 16 of Article III of the State Constitution: "Sec. 7. That no dealer in intoxicating liquors, wines or beer shall himself drink, consume or give away any intoxicating liquor, wine or beer in any quantity on the premises where such liquor, wine or beer is sold, nor shall he permit or suffer any assistant, servant, employee, purchaser or any person whomsoever to drink, consume or give away any intoxicating liquor, wine or beer on such premises, nor shall he provide any other premises with the intent to defeat the policy of this act."

6. Sections 1 and 7 of Chapter 6860 of the Laws of the State of Florida of 1915, being entitled "An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer, and prescribing a penalty for the violation of certain of its provisions, and repealing laws in conflict herewith," are not violative of any of the provisions of Sections one and twelve of the Declaration of Rights of the Constitution of the State of Florida or of Article XIX of such constitution.

7. Article XIX of the Constitution of the State of Florida is to be construed in connection with all the other provisions of such constitution.

8. Article XIX of the Constitution of the State of Florida does not undertake to deal with regulating the sale of intoxicating liquors, under the police power which the legislature has the authority to exercise, but only to give the qualified voters in any county the right to determine at an election called for that purpose whether or not the sale of such liquors shall be absolutely prohibited in such county. Where the sale of intoxicating liquors is permitted or authorized in a county it is still subject to such regulations under the police power as the legislature may prescribe, short of actual or practical prohibition.

9. The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are all matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly made to appear beyond a reasonable doubt that it is unconstitutional.

This is a case of *habeas corpus* originating in this court.

Writ discharged.

TAYLOR, C. J., and ELLIS, J., dissent.

*John E. & Julian Hartridge,* for Petitioner;

*T. F. West,* Attorney General, for the State.

SHACKLEFORD, J.—This is an original proceeding in this court upon a writ of *habeas corpus,* issued by the Chief Justice returnable to the full court. Adolph Pricha,

the petitioner, is in the custody of the sheriff of Duval county, Florida, under a warrant issued by the county judge of such county, charging the petitioner with a violation of Chapter 6860 of the Laws of 1915, which warrant reads as follows:

"In the Name of the State of Florida:

"To the Sheriff or any Constable of said County of Duval:

"Whereas, James C. Crawford has this day made oath before me that on the first day of October, 1915, in the county of Duval and State of Florida, a county in which liquors, wines and beer are authorized to be sold under the laws and constitution of the State of Florida, Adolph Pricha, who was then and there a dealer in intoxicating liquors, wines and beer, did then and there operate and conduct a bar room or place of business for the selling and retailing of intoxicating liquors, wines and beer at the southeast corner of Bay and Washington streets, in the city of Jacksonville, county of Duval and State of Florida; the said Adolph Pricha did then and there in his said bar room and place of business aforesaid, sell to a certain man, to-wit, Ben Jones, intoxicating liquor in a less quantity than one-half pint, and not contained in a securely sealed receptacle, to-wit, one drink of whiskey in an open glass receptacle not securely sealed, containing one-fourth of one half a pint of whiskey, contrary to the form of the statute in such case made and provided.

"And the said James C. Crawford on his oath aforesaid, says that on the first day of October, 1915, in the county of Duval and State of Florida, a county in which

liquors, wines and beer are authorized to be sold under the laws and constitution of the State of Florida, Adolph Pricha, who was then and there a dealer in intoxicating liquors, wines and beer, did then and there operate and conduct a barroom or place of business for the selling and retailing of intoxicating liquors, wines and beer at the southeast corner of Bay and Washington streets, in the city of Jacksonville, county of Duval and State of Florida; the said Adolph Pricha did then and there in his said barroom and place of business aforesaid, sell to a certain man, to-wit, Ben Jones, intoxicating liquor in a less quantity than one-half pint, and not contained in a securely sealed receptacle, to-wit, one drink of whiskey in an open glass receptacle not securely sealed, containing one-fourth of one half pint of whiskey, and did permit the said Ben Jones to whom the said drink of whiskey was sold, to drink the same in the barroom and on the premises of the said Adolph Pricha, said liquor being drunk by the permission of the said Adolph Pricha and on the premises on which same was sold, and did fail and neglect and refuse to see that Section 7 of Chapter 6860 of the Laws of Florida was then and there complied with, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

"These are therefore to command you to arrest instanter, the said Adolph Pricha, and bring him before me to be dealt with according to law.

"Given under my hand and seal, this first day of October, 1915."

Chapter 6860 of the Laws of Florida, found on page 125 of Vol. 1 of the Laws of 1915, is as follows:

"CHAPTER 6860—(No. 54).

"AN ACT to Regulate the Sale or Furnishing of In-
toxicating Liquors, Wines or Beer, and    Prescribing a
Penalty for the Violation of Certain of its Provisions,
and Repealing Laws in Conflict herewith.

*"Be it Enacted by the Legislature of the State of Florida:*

Section 1.   That no intoxicating liquors, wines or beer
shall be sold, in counties where the sale of the same is al-
lowed by law, in less quantities than one-half of a pint,
and no one shall sell any liquors, wines or beer that are
not contained in securely sealed receptacles.

Sec. 2.   That no person who is a dealer in intoxicating
liquors, wines or beer shall sell or furnish any intoxicat-
ing liquors, wines or beer in any quantity to an habitual
drunkard personally known to him, of whose intemperate
habits such person has been notified in writing protesting
against the selling or furnishing of such intoxicating li-
quors, wines or beer, by the wife, father, mother, brother
or sister of such drunkard.

Sec. 3.   That no person who is a dealer in intoxicating
liquors, wines or beer, by himself or another, shall sell
or cause to be sold or furnished or permit any person in
his employ to sell or furnish any minor, female, or any
person who is at the time intoxicated or drunk, intoxi-
cating liquor, wine or beer, in any quantity.

Sec. 4.   That it shall be unlawful for any person keep-
ing or carrying on, either by himself or another, a place
where intoxicating liquors, wines or beer are sold by re-
tail or wholesale to employ a minor or female in his place
of business.

Sec. 5.   That it shall be unlawful for any person to

sell intoxicating liquors, wines or beer, between the hours of six o'clock p. m. and seven o'clock a. m.

Sec. 6.   That it shall be unlawful for any person to sell intoxicating liquors, wines or beer on Sunday, or on general, special or primary election   days, either State, county or municipal.

Sec. 7.   That no dealer in intoxicating liquors, wines or beer shall himself drink, consume or give away any intoxicating liquor, wine or beer in any quantity on the premises where such liquor, wine or beer is sold, nor shall he permit or suffer any assistant, servant, employee, purchaser or any person whomsoever to drink, consume or give away any intoxicating liquor, wine or beer on such premises, nor shall he provide any other premises with the intent to defeat the policy of this act.

Sec. 8.   That no gates, doors, windows or openings of any kind shall connect the place of business of any dealer in intoxicating liquors, wines or beer with any adjacent house or lot so as to permit ingress into or egress out of such house or lot from or into such place of business: that no blinds or screens, chairs, settees, benches or tables shall be set up or used in such place of business; that no musical, vaudeville or other attractions shall be permitted to be carried on in such place of business, nor shall any loitering be allowed therein; that no obscene or sensuous picture or statuary shall be displayed in any such place of business; that throughout the night a light or lights shall be kept burning in such place of business, and no doors, blinds, curtains, shades, screens or other things shall be allowed to prevent persons on the outside of such place of business from seeing inside thereof at all hours of the day and night, and it shall be the duty of the proprietor

of such place of business to see that this section is complied with.

Sec. 9. That no retail dealer shall trust, or give credit to any person or persons whomsoever for intoxicating liquors, wines or beer, and for a violation of the provisions of this section no debt or demand for intoxicating liquor, wines or beer shall be enforced in a Court of Law.

Sec. 10. That it shall be unlawful to sell, dispose of or distribute or keep for sale, disposal or distribution any meals, lunches or victuals of any kind whatsoever in any room or place where intoxicating liquors, wines or beer are sold or kept for sale.

Sec. 11. That intoxicating liquors, wines or beer shall not be sold or exposed for sale in any room of any building the floor of which room shall be more than three feet above or below the sidewalk immediately in front of such room or in the absence of such sidewalk, the floor of such room shall not be more than three feet above or below the ground.

Sec. 12. In this Act, unless the context otherwise requires, 'Persons' includes a body of persons whether incorporated or not.

Sec. 13. That any person violating any of the foregoing provisions of this Act, shall be deemed guilty of a misdemeanor and upon conviction thereof, his license shall be forfeited and he shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the County Jail not exceeding twelve (12) months.

Sec. 14. That this Act is not intended to repeal any existing law in reference to the sale of intoxicating liquors, wines and beer, unless in conflict herewith, but

Chapter 6516 of the Laws of 1913 and all other laws in conflict herewith are hereby repealed.

Sec. 15.   That this Act shall take effect at midnight of the night of September 30, A. D. 1915.

Approved May 5, 1915."

The petitioner alleges "that Sections One and Seven of Chapter 6860 of the Laws of the State of Florida of 1915 are in violation of Sections One and Twelve of the Declaration of Rights of the Constitution of the State of Florida, and in violation of Section 16 of Article Three of the Constitution of the State of Florida, and in violation of Article 19 of the Constitution of the State of Florida."

Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida read as follows:

"Section 1.   All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety."

. "Section 12.   No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation."

Section 16 of Article III is in the following words: "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section, as amend-

18

ed, shall be re-enacted and published at length."

Article XIX is as follows:

### "Local Option.

"Section 1.   The board of county commissioners of each county in the State, not oftener than once in every two years, upon the application of one-fourth of the registered voters of any county, shall call and provide for an election in the county in which application is made, to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote of those voting at the election called under this section, which election shall be conducted in the manner prescribed by law for holding general elections; Provided, That intoxicating liquors, either spirituous, vinous or malt, shall not be sold in any election district in which a majority vote was cast against the same at the said election.   Elections under this section shall be held within sixty days from the time of presenting said application, but if any such election should thereby take place within sixty days of any State or National election, it shall be held within sixty days after any such State or National election.

"Section 2.   The legislature shall provide necessary laws to carry out and enforce the provisions of section one of this article."

The first contention insisted upon before us is that Sections one and seven of Chapter 6860 are violative of Section 16 of Article 3 of the State Constitution.   We have frequently had occasion to consider and construe this clause of the constitution.   See State *ex rel.* Moodie v Bryan, 50 Fla. 293, 39 South. Rep. 929, wherein the prior decisions of this court upon the point will be found

collected. As we held in the cited case, while the provision in Section 16 of Article 3 of the Constitution is mandatory and of as much binding force upon the Legislature and upon the courts as any other provision of that instrument, and while it is the duty of the courts to declare legislative enactments void, when questioned, that are clearly non-complaint with its requirements, still the courts in construing the acts of the legislative branch of the government should always apply a liberal rule, and refuse to declare its action void, except in clear cases that are free from every reasonable doubt.

It is a sufficient compliance with Section 16 of Article 3 of the Constitution if the subject is expressed in the title to the act, the matters properly connected with such subject not being required to be expressed in the title.

If the title to the act fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill it is all that is necessary. The title need not be an index to the contents of the bill or act. Also see the subsequent decisions of Campbell v. Skinner Mfg. Co., 53, Fla. 632, 43 South. Rep. 874; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747; State v. Bethea, 61 Fla. 60, 55 South. Rep. 550; Thompson v. State, 66 Fla. 206, 63 South. Rep. 423. As is well said in an instructive note on page 430 of 15 L. R. A. (N. S.), "the constitutional provision found in nearly all the states, which, with a few minor variations, is to the effect that no law shall embrace more than one subject which shall be expressed in its title, is one which has been employed with much frequency to assail various statutes, not a few of which have been the liquor laws." Numerous authorities are cited to us upon the point under consideration from

other jurisdictions, which, however, we do not deem it necessary to analyze or discuss for the reason that we are of the opinion that the principles enunciated in our own decisions are decisive of the matter. In addition to the cases already cited, we would refer especially to Ex Parte Lewinsky, 66 Fla. 324, 63 South. Rep. 577, 50 L. R. A. (N. S.) 1156. It will be observed that the act now under consideration expressly repeals Chapter 6516 of the Laws of 1913, which was before us for construction in the Lewinsky case. In that case, as in the instant case, it was contended that the act was unconstitutional because the title thereto was violative of Section 16 of Article III of the State Constitution. We call attention to the fact that the only difference in the titles to these two acts is that Chapter 6860 has the additional words in its title, "and repealing laws in conflict herewith." We refused to sustain this contention in the Lewinsky case and must do likewise in the instant case, believing that the principles there announced are controlling here. As we there said, the cited act of the legislature is alleged to be unconstitution and void, upon two grounds : The title being "An Act to Regulate the Sale or Furnishing of Intoxicating Liquors, Wines or Beer, and Prescribing a Penalty for the Violation of Certain of Its Provisions" is said to be too restrictive to admit of the prohibitions therein contained. The assertion is untenable. Every regulation is of necessity a restriction. "Regulate" is defined by Webster to mean "to direct by rule or restriction." We are strengthened in the correctness of this conclusion by the forcible reasoning in McPherson v. State, 174 Ind. 60, 90 N. E. Rep. 610, 31 L. R. A. (N. S.) 188, a case which is very much in point. We have carefully

read not only the majority opinion rendered therein, but also the vigorous dissenting opinion, and have also examined many of the authorities cited in the two opinions, in which will be found collected practically all the cases upon each side of the question. As will be readily seen, there is some conflict in the authorities, but we are of the opinion that the majority opinion is not only the better reasoned but is the better supported by the authorities. Following the course therein pursued and reviewing the history of the legislation in this State relating to the sale of intoxicating liquors, we reach the conclusion therein announced that "the object and purpose of the Act before us is the regulation, and not the prohibition, of the liquor traffic," and that the subject treated in sections one and seven, upon which the assault is made, is fairly deducible from the title of the Act, and that there has been no violation of Section 16 of Article III of the State Constitution. We take the following excerpt from the majority opinion, which, we think states the law correctly: "Furthermore, the word 'prohibition' is akin to 'regulate, restrict and control.' Its use in the body of the act is of little significance. To forbid the sale of liquor by those who have no license, to deny the licensee the right to sell on certain days, between certain hours, in certain places, in certain quantities, is, to some extent at least, qualified prohibition. It is prevention, interdiction. Such laws, however, are unquestionably regulations and restrictions of the liquor traffic. They operate as a check, or restraint, upon the sale, not as an absolute inhibition, and are in the strictest sense regulations. They regulate by prohibiting the sale at certain times, to certain persons, and in certain places. Besides, to say the law

'Prohibits' the citizen from selling without a license, or that the law 'prohibits' the licensed seller from selling on Sunday, is etymologically correct. In fact, the word was employed in this sense by the legislature in framing section four of the Nicholson law (§8327 Burns 1908, Acts 1895 p. 248), which provides that obstructions to the street view shall not be set up in the selling room 'during such days and hours when the sales of such liquors are *prohibited* by law.' So it is not so much the primary meaning of the word as the sense in which it is popularly understood, as applied to the manufacture and sale of spirituous liquors, that must control.

Following are a few definitions of 'prohibitions' as specifically applied: 'Interdiction of the liberty of making and of selling, or giving away, intoxicating liquors for other than medicinal, scientific and . religious purposes.' Anderson's Law Dict. And see Bouvier's Law Dict (Rawle's ed.). 'The forbidding by law of the manufacture and sale of alcoholic liquors.' English's Law Dict. 'The forbidding by law of the sale of alcoholic liquors as beverages.' Webster's Int. Dict. 'The forbidding by legislative enactment of the manufacture and sale of alcoholic liquors for use as beverages.' Standard Dict. The term has even a wider sweep than this. A prohibitory law to be classed as such must, at the same instant, in the same way, become effective to interdict the sale of liquors throughout all parts of the jurisdiction of the lawmaking power." We would also refer to the interesting discussion in State v. Fulks, 207 Mo. 26, 105 S. W. Rep. 733, 15 L. R. A. (N. S.) 430, and especially to the note appended thereto in 15 L. R. A. See also the

note appended to the Lewinsky case in 50 L. R. A. (N. S.) 1156.

We now pass to the further contentions of the petitioner that Sections one and seven of the act under consideration are violative of Setcions one and twelve of the Declaration of Rights of the State Constitution and also of Article XIX of the Constitution, which contentions we may conveniently treat together.

In the prior decisions of this court which we have cited and in what we have already said these contentions have been practically decided adversely to the petitioner. As was said in Crowly v. Christensen, 137 U. S. 86, text 91, 11 Sup. Ct. Rep. 13, "There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States." The entire opinion from which this quotation is taken will prove most instructive. Unquestionably but for the provisions contained in Article XIX of the State Constitution, the Legislature would have the power to prohibit and suppress the traffic in intoxicating liquors. Since the adoption of this Article the Legislature from time to time has enacted laws regulating and restricting such traffic, and again and again we have upheld such statutes. See Crabb v. State, 47 Fla. 24, 36 South. Rep. 169; Schiller v. State, 49 Fla. 25, 38 South. Rep. 706; Ex Parte Theisen, 30 Fla. 529, 11 South. Rep. 901, 32 Amer. St. Rep. 36; Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34; Howland v. State, 56 Fla. 422, 47 South. Rep. 963, 21 L. R. A. (N. S.) 192; State v. Ackerly, 69 Fla. 23, 67 South. Rep. 232. As we held in Butler v. State, 25 Fla. 347, 6 South. Rep. 67, and also in subsequent cases, "Whenever the local

option Article of the Constitution prohibiting the sale of intoxicating liquors, wines or beer is put in operation in any county or any election district, it suspends, during the period of its operation therein, the provisions of all statutes authorizing or licensing the sale of intoxicating liquors, either spirituous, vinous or malt, in such county or district." As we also said in State *ex rel.* Metcalf v. Butt, 25 Fla. 258, text 267, 5 South. Rep. 597, "While it is true that Article XIX of the Constitution was submitted to the people to be voted upon separately from the other articles, yet in the language of the ordinance submitting it, it was 'to become *a part of the Constitution,* if adopted by a majority of the votes cast upon the question.' It is in our judgment as much a part of the Constitution as any other article of that instrument is." We would add that, as a part of the Constitution, it is to be construed in connection with all the other provisions thereof. Article XIX does not undertake to deal with regulating the sale of intoxicating liquors, under the police power which the legislature has the authority to exercise, but only to give the qualified voters in any county the right to determine at an election called for that purpose whether or not the sale of such liquors shall be absolutely prohibited in such county. Where the sale of intoxicating liquors is permitted or authorized in a county it is still subject to such regulations under the police power as the legislature may prescribe, short of actual or practical prohibition, as we held in Ex Parte Lewinsky, *supra.*

It cannot successfully be contended that the Act in question extends to actual or practical prohibition of the sale of intoxicating liquors. There would seem to be no occasion for citing authorities from other jurisdictions,

as we are bound by our own decisions. We content ourselves with merely referring to the following, among the many which we have examined: State v. Calloway, 11 Idaho, 719, 84 Pac. Rep. 27; Paul v. Judge of the Circuit Court of Gloucester County, 50 N. J. L. 585, 15 Atl. Rep. 272, 1 L. R. A. 86. See also Joyce on Intoxicating Liquors, Sec. 121, where many cases will be found cited.

We held in State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep.. 929, as we have done in both prior and subsequent decisions, that "The reasonableness or justice of a deliberate act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the act does not contravene some portion of the organic law, are all matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly made to appear beyond a reasonable doubt that it is unconstitutional."

As we also held in the cited case, following prior decisions, "In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is a well settled and cardinal rule that nothing but a clear violation of the constitution will justify the courts in overruling the legislative will; and where there is reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act." See also the subsequent decisions of McNeil v. Webeking, 66 Fla. 407, 63 South. Rep. 728; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769; Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775, 52 L. R. A. (N. S.) 287.

It is not for us to forecast the practical working of the Act or to determine whether it will result in promoting

the cause of temperance or the contrary. After the most careful consideration, we are of the opinion that the Act is not open to the attack made upon it and that we would not be warranted in declaring sections one and seven invalid and unconstitutional.

The petitioner has failed to point out wherein any of his constitutional rights have been invaded; it follows that the writ must be discharged and he be remanded to custody.

COCKRELL and WHITFIELD, JJ., concur.

WHITFIELD, J., (*concurring.*)—A legislative exercise of the police power of the State will not be rendered inoperative by the courts unless such legislation clearly and beyond reasonable doubt violates some identified provision of the State or Federal Constitution. This principle is peculiarly applicable to statutory regulations of the traffic in intoxicating liquors. Such traffic may under the police power and within the legislative discretion, by duly enacted statutes, be entirely prohibited; or if permitted the traffic may be regulated in any way that, in the legislative judgment, is conducive to the general welfare, when such prohibition or regulation does not violate organic law. Statutes defining the classes of persons who may sell intoxicating liquors and requiring licenses to be procured therefor, prescribing the times when, the places where, the conditions of the premises upon which, and the quantities and the way in which, intoxicating liquors may be sold, forbidding the sale to certain classes of persons who need protection and forbidding intoxicating liquor to be given away or consumed on the premises where it is sold, should be regarded as regulations of a

traffic that continues to be carried on. When such enactments do not indubitably violate some applicable provision of the paramount organic law, they should not be nullified by the courts.

Article XIX of the State Constitution provides for local option elections in any county "to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein," but does not give or provide for acquiring a right to sell or to buy such liquors, wines or beer in any given quantity where sales are lawful. The Article makes no reference to the regulation of the sale of intoxicating liquors, wines or beer, thereby leaving to the legislature in the exercise of the police power of the State, and within the lawmaking discretion, power to prescribe controlling regulations for the sale where it is lawful, the only limitation upon such legislation, resulting from Article XIX being that the regulation shall not accomplish actual or practical prohibition. Where prohibition has been voted there is no room for regulation, but where the sale is lawful, such sale is subject to valid regulation under the police power of the State.

Public welfare may require restrictions as to the quantities in which intoxicating liquor may be sold, as well as to the classes of persons to whom, and the location where, it may be sold; and the power of the legislature is the same as to all kinds of restrictions that regulate the traffic and do not effectuate virtual prohibition, in violation of Article XIX. The organic provision refers to "the sale," not to "sales in any quantity" nor to "sales as being made when Article XIX was adopted," and "the sale" is always subject to regulation.

Since the adoption of Article XIX, statutes have ab-

solutely forbidden the sale of intoxicating liquors, wines
or beer to designated classes of persons, and in specified
localities.   These statutes in effect prohibited some sales
that were lawful when Article XIX was adopted, but they
have been adjudged to be lawful police regulations that
do not accomplish unlawful prohibition, since by such re-
strictions or partial prohibitions "the sale of intoxicating
liquors, wines or beer" is not "prohibited," within   the
meaning of Article XIX.   If such provisions are regula-
tions and not unlawful prohibition, then likewise, where
the sale of intoxicating liquors, wines or beer is lawful,
a statute, as a police regulation, for the general welfare,
may absolutely forbid sales in stated quantities when,
though such regulation in effect prohibits some sales that
had been unlawful, it does not cause prohibition within
the meaning of Article XIX.   There is no clear violation
of Article XIX by section one of this statute, which as a
police regulation, restricts the minimum quantity in which
sales may be made to a half pint, when sales in quantities
that are not forbidden amount to liquor traffic for prac-
tical purposes, and the sales that are not forbidden are not
made so arbitrarily and excessively burdensome   as to
cause prohibition.   If the court knows that, before this
statute took effect, it was common practice for dealers in
intoxicating liquors, wines or beer to sell in quantities
less than a half pint, it also knows that it was the common
practice of dealers to sell in quantities greater than a half
pint.   The effect of the statute on the liquor traffic is not
shown.   Obviously the statutory provision is a police reg-
ulation, presumably enacted for the public good; and as it
does not appear beyond a reasonable doubt that its terms
violate any provision of the constittuion, the statute is the

controlling law to be administered by the courts, when its application is not shown to violate the paramount organic law.

"The sale of intoxicating liquors, wines or beer" comprehends those who sell, those who buy and the subject matter of the sale. If those who sell and those who buy may be limited or restricted under the police power for the public good, when prohibition is not thereby virtually effectuated, in violation of Article XIX, the minimum quantity in which the subject matter may be sold can also be limited or restricted under the police power for the public good, when virtual prohibition is not thereby accomplished in violation of Article XIX. Any regulation may to some extent restrict and partially prohibit sales, but that does not cause prohibition of the sale of liquors.

The statute here considered does not forbid the sale, but expressly recognizes the right to sell as may be lawful, and there is nothing to indicate that the statute restricts the minumum quantity in which the sale may be made more than lawful police regulation requires for the general welfare of the State, or that it makes the sales in the quantities allowed unduly burdensome, or that it in effect causes virtual or actual prohibition. No limitation is put upon the maximum amount of liquors that may be sold. The restriction is upon the minimum quantity in which sales may be made, which does not "prohibit" "the sale" of liquors but regulates the sale.

It does not clearly appear that the provisions of sections one and seven of Chapter 6860 are not "one subject and matter properly connected therewith," and covered by the subject expressed in the title of the act, within the requirement of Section 16, Article III of the State

Constitution, or that the title is misleading. Such sections do not indubitably violate the organic right to acquire, possess and protect property or deprive any one of property without due process of law, in contravention of Sections 1 and 12 of the Declaration of Rights, since it does not clearly appear that the provisions are not valid police regulations of a local traffic that is essentially the subject of State control. Nor are such provisions apparently so unreasonable as to amount to an unlawful prohibition of the liquor traffic rather than a regulation of it within the legislative authority as they purport to be. The regulation contained in section seven that no dealer in intoxicating liquors, wines or beer shall permit or suffer any person to drink, consume or give away any intoxicating liquor, wine or beer on the premises where sold, is clearly a police regulation that does not manifestly impose an unlawful burden upon the dealer; nor does it preclude the dealer from successfully interposing any defense secured to him by the organic or other law applicable to the offense defined by the act. Section seven was obviously intended to make effective the provisions of section one. Since the statute is not shown to indubitably violate organic law, its reasonableness is not a judicial matter. The validity, not the policy of the act is considered here. It took effect at the beginning of a license year.

Article XIX of the constitution provides a method by which "the sale of intoxicating liquors, wines or beer" may be "prohibited," leaving to the legislature power to regulate the liquor traffic, in any way and to any extent that does not effectuate actual or practical prohibition where the sale of intoxicating liquors, wines or beer is

lawful.    "The sale" is not "prohibited" and actual or practical prohibition is not manifestly accomplished by forbidding any sales to be made in quantities less than a half pint and by requiring all sales to be made in securely sealed receptacles, where the sale in quantities of a half pint or more in sealed packages is both lawful and practical for useful purposes.

ELLIS, J.—(*Dissenting.*)—I conceive the real point in this controversy to be whether Article XIX of the Constitution recognizes dealing in intoxicating liquors, wines or beer in this State to be a legitimate business and one in which every person has a legal right to engage subject to the reasonable regulations that may be imposed by the Legislature, in the exercise of its police power, and the right of the people in any county of the State by a majority vote of its electorate voting at an election called for that purpose to prohibit the sale of intoxicating liquors, wines or beer in the county voting against such sale.

It is difficult to perceive how any one who reads the Constitution and is mindful of the established rules of constitutional construction can entertain a contrary opinion.

At the time the constitution was adopted the sale of intoxicating liquors was generally carried on in this State by saloons or dram shops where such liquors were sold in any quantity either to be drank on the place where sold, or to be carried away and used by the purchasers at will.    The phrase "sale of intoxicating liquors, wines or beer" as used in the constitution has reference   to such methods of sale as were at the time generally in use and pursued by those engaged in the sale of that commodity.

"It is settled by very high authority that in placing a construction on a constitution, or any clause or part thereof, a court should look to the history of the time and examine the state of things existing when the constitution was framed and adopted, in order to ascertain the old law, the mischief and the remedy.    Constitutions   like statutes, are properly to be expounded in the *light of conditions existing* at the *time* of their adoption."    6 R. C. L. p. 51; Rhode Island v. Massachusetts, 12 Pet. (U. S.) 657, (9 L. Ed. 1233); Slaughter House Cases, 16 Wall. (U. S.) 36, (21 L. Ed. 394); Strauder v West Virginia, 100 U. S. 303; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. Rep. 448, 494; Fox v. McDonald, 101 Ala. 51, 13 South. Rep. 416.

This court in a recent case, State *ex rel.* v. J. Turner Butler, decided at this term, recognized the above principle of constitutional construction.    The twelfth headnote employs the following language:    "12.    Words or terms used in a constitution which is dependent upon a ratification by the people must be interpreted in a sense most obvious to the common understanding at the time of its adoption."

It follows, therefore, that the people of this State in adopting Article XIX of the Constitution, which by 'Ordinance of the Constitutional Convention was submitted to the people for ratification or rejection as an independent proposition at the time the constitution was submitted, placed upon the Legislature a restriction against the exercise of the power to prohibit the sale of intoxicating liquors, wines or beer in any quantity.    The power to prohibit the sale of such liquors was reserved to the people of the respective counties as a local option proposition.

The question to be submitted at such an election was not divided so that an expression of the will of the people could be obtained as to sale by quantities great or small, nor was it intended that it should be. The dram shop or tippling saloon constituted a great, if not the greater part of the mischief aimed at by Article XIX, and so the question in its entirety was provided to be submitted. If the people of any county spoke affirmatively upon the question submitted, the sale of intoxicating liquors in any quantity was thereafter prohibited in such county until another election should be held under the provision of the Article XIX when the people if they saw fit to do so might reverse their policy. If on the other hand the people of any particular county at an election called for the purpose should not vote to prohibit the sale of intoxicating liquors, then the sale of such liquors in the manner and by the methods which obtained when the constitution was adopted was not prohibited in such county except in such precincts where a majority vote had been cast against such sale.

The manner and method of the sale of intoxicating liquors as has been pointed out, was by any quantity that the seller might decide upon, whether by the drink, or in sealed packages by wholesale. This method and manner of sale was subject only to the reasonable regulations that might be prescribed by the legislature in the exercise of the police power to regulate the sale of such liquors. This power to regulate the sale of intoxicating liquors in this State, therefore, lies within the boundaries of absolute prohibition of the sale in any quantity.

The Legislature has no more power to prohibit absolutely the sale of intoxicating liquors in quantities less

than half a pint, than it has to prohibit the sale of such liquors in quantities less than half a barrel, or ten gallons or half a gallon. If it has, where is the line of demarkation beyond which the courts may say constitutionally thus far shalt thou go and no farther? Such line would lie in a zone whose light would be that afforded by the conscience of the individual judge whose duty it became to determine the question, and not that afforded by the will of the legislature or the language of the constitution.

The court has nothing to do with the moral question. That intoxicating liquor is in its nature dangerous to the morals of the consumer and through him to the peace and good order of society; that it is, when drank as a beverage, destructive of the health and happiness of the consumer, and makes for the unhappiness, even misery and poverty of his family, and often visits upon his children in their physical natures and moral character the evils resulting from his intemperance, are questions for consideration by the people to be acted upon in adopting their constitution which they ordain for the government of their State, or in the absence of constitutional action, by their legislatures in whom is vested the power to control and regulate or prohibit the traffic. In this State the power to prohibit the traffic in large or small quantities has been taken from the Legislature by the people, leaving it the power only to regulate the traffic by reasonable regulations.

So long as this State recognizes by its constitution that the traffic in or sale of intoxicating liquors, wines or beer is a legitimate occupation, it is not within the province of the legislature to destroy the traffic entirely or

partially, nor should the courts fritter away constitutional privileges by fine spun theories and hair splitting distinctions in order to sustain an act of the legislature which has for its purpose the complete destruction of one phase of the traffic, and the regulation of what is left.

This court has recognized the distinction between "regulation" and "prohibition" and in such action it is in line with the great weight of authority in this country. The Lewinsky case, 66 Fla. 324, 63 South. Rep. 577, holds that regulation must stop short of actual or practical prohibition. The majority opinion assumes that the act in so far as it prohibits absolutely the sale of intoxicating liquors in quantities less than one half a pint is regulation, but not one case cited in the majority opinion supports the proposition that under a constitutional provision like ours, a statute prohibiting the sale of intoxicating liquors in small quantities is regulation. This State has never so held, and whenever this court has had before it statutes regulating the sale of intoxicating liquors, whether the act forbade the sale on Sunday or election days, or to minors, inebriated persons, or women, or within certain distances of churches and school houses, the distinction between reasonable regulation and prohibition was regarded. The majority opinion quotes from the language of Mr. Justice FIELD in the case of Crowley v. Christensen, 137 U. S. 86, 7 Sup. Ct. Rep. 13, as follows: "There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State, or of a citizen of the United States." If the phrase "inherent right" means legal right, can the language be applied to this State with a constitution like ours, which expressly recognizes the right to

engage in the business of selling intoxicating liquors? The case of State v. Fulks, 207 Mo. 26, 105 S. W. Rep. 733, simply holds that an act which prohibits the "sale" of intoxicating liquor could not also prohibit the giving of it away as an act of courtesy or hospitality when not connected directly or indirectly with any business, because the act would be dealing with two subjects, and thus violate the constitutional provision that no bill should contain more than one subject.

In the case of Paul v. Gloucester County, 50 N. J. L. 585, 15 Atl. Rep. 272, 1 L. R. A. 86, the court held that prohibiting the sale of intoxicating liquors in small measure, could be included in an act which purported to regulate the sale without violating the constitutional clause against including in one act two subjects having no proper relation to each other. But the constitution of that State contains no clause like our 19 Article. Neither do the Idaho nor Indiana Constitutions.

I think the first section of the act is invalid and on the authority of the Fulks case cited in the majority opinion the seventh section is also void because in so far it may be construed as an attempt to prevent the giving of intoxicating liquor away as an act of courtesy or hospitality and not connected with the business of selling it, the subject is different from and not related to that of regulating the traffic in intoxicating liquors.

TAYLOR, J. (*Dissenting.*)—I am unable to agree to the conclusions reached by the majority of the court in this case, but concur in the views expressed in the dissenting opinion filed by Mr. Justice ELLIS. My view of the legislation involved is that the whole act is unconstitu-

tional and void because it is on its face  a cleverly con-
structed attempt to evade the provisions of our organic
law by establishing through legislative action virtual pro-
hibition in those localities where the people by their votes
have not directly decided that such prohibition shall ob-
tain.  Our constitutional convention of 1885 that framed
our present organic law, according to the recollection of
the writer, had the most pronounced controversy over Ar-
ticle XIX of that instrument, and did not agree to it un-
til after a compromise by which the entire Article should
be designated by the caption "Local Option," and by the
adoption of Ordinance No. 2, whereby it was provided
that said Article XIX should be submitted to the voters
of the State for ratification as a separate and  distinct
proposition from the remainder of the constitution to be
proposed for ratification by the people at the same elec-
tion, and to become a part of the organic law only upon
its being ratified by a majority of the votes cast upon it
as such separate proposition.  Its subsequent ratification
by the electors has embedded it in our organic law as a
part thereof, and the electors of our State by a large ma-
jority have since  then within the past  few years ex-
pressedly refused to repeal it by a proposed amendment
and to substitute in its stead total or State wide prohi-
bition.  What is its object and purpose?  Clearly to my
mind it was, as its designative heading and its clearly
expressed provisions show, to take from the legislative
branch of the government all power or authority to en-
act prohibitory laws either partial or total for any locality
in the State against the sale of intoxicants, and to reserve
to the people of the various counties the right *"to decide
whether the sale of intoxicants  *  *  *  shall be prohib-*

*ited therein"*—such *decision* of the question as to whether such prohibition shall be declared or established therein, not to be made by or through legislative *ipse dixit,* but by the direct vote of the electors of the county in an election called and held to pass upon and decide that particular and especial question. Where the electors of a county either by direct vote at an election called and held to pass upon and decide the question, or by refraining from a decision of the question by refusing to call for an election thereon to determine it, have established the right of its citizens to deal in intoxicants in such county, the legislature has no authority to enact any law aplicable to such locality that takes away from the people therof the local option or right to *decide* such question for themselves. If it be admitted that the legislature has the power, under the guise of *regulation* of the traffic in intoxicants, to *forbid* or *prohibit,* as does the act in question, the sale of such intoxicants in quantities less than the half of one pint and that to be in a securely sealed receptacle, then it must inevitably be admitted that it also has the power to forbid or prohibit the sale of such intoxicants in less quantity than a pint, or a quart or a gallon, or ten, fifty or a hundred gallons, according to the whim of the lawmaking power, and this in the face of the fact that the sovereign people of the locality have decided in the way pointed out in the constitution that prohibition of such sales shall not obtain in such locality. The moral aspect of the traffic in intoxicants is entirely outside of the question we are called upon to decide here. I think that the whole act is null and void because it is an unauthorized attempt of the legislature under the guise of regulation of the traffic in intoxicants to establish prohibition in this

State by legislative enactment, instead of leaving the question to be decided according to the constitution by the direct vote of the people of the counties at elections specially called to decide such question. I regard the legislation here involved as much of and as unauthorized an invasion of the right of local option especially reserved to the people of the various counties in this State, as if it had contained another provision to the effect that in those counties wherein prohibition had been established by local option elections it should not be deemed or held to be a sale of or traffic in intoxicants if such sale was not in a greater quantity than the half of one pint. If the legislature has the right constitutionally to establish partial prohibition in the one case they could with equal right disestablish in the other by declaring that to be no sale when made in the quantity limited. For the reasons herein stated, in addition to those stated in the dissenting opinion of Mr. Justice ELLIS, I think the whole act in question is clearly unconstitutional and void.