THE STATE OF FLORIDA EX REL. J. J. BUCKHEITT, RELA-
TOR, VS. CECIL G. BUTT, JUDGE OF THE CRIMINAL COURT
OF RECORD OF ORANGE COUNTY, RESPONDENT,

AND

THE STATE OF FLORIDA EX REL. HARRY W. METCALF,
RELATOR, VS. CECIL G. BUTT, JUDGE OF THE CRIM-
INAL COURT OF RECORD OF ORANGE COUNTY, RESPOND-
ENT.

1. The Constitution gives to any Criminal Court of Record that may
be established by the Legislature in a county, jurisdiction of all
criminal cases not capital which may arise in the county, and
provides that the Circuit Court shall have final appellate juris-
diction of all misdemeanors tried in them, and that the Supreme
Court shall have appellate jurisdiction of cases of conviction of
felony by them.

2. The sale of liquors contrary to the provisions of the act of 1887
(chapter 3700), for the enforcement of the 19th, or local option,
Article of the Constitution, is, under the terms and effect of the
third section of sai l act and of section 25, of Article XVI of the
Constitution, a misdemeanor, and a judgment of conviction there-
of rendered by a Criminal Court of Record, is subject to be re-
viewed by the Circuit Court.

3. The Legislature cannot take from the County Criminal Courts of
Record their constitutional jurisdiction to try a criminal offence
not capital.

4. A mere grant of jurisdiction to one court to try a certain class of
criminal offences, is not a withdrawal from another court of an
existing jurisdiction to try the same offences.    An act whose
terms purport simply to grant to the Circuit Court juristiction
of an offence which such act makes a misdemeanor, will not be
held as having been intended to deny to the County Criminal
Court of Record their constitutional jurisdiction of such offence,
but should be construed as simply a grant of concurrent jurisdic-
tion to the Circuit Court.    Whether such grant of concurrent
jurisdiction is constitutional, not involved nor decided.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*J. H. Allen*, *Foster & Gunby* for Relators.

Article XIX of the Constitution was treated by the Constitutional Convention as separate and distinct from the rest of the Constitution, and was voted upon separately. In that Article supreme power was in section 2 to provide necessary laws to carry out and enforce the provisions of section one of the Article.

On the 31st day of May, 1887, the Legislature passed an act organizing the Criminal Court of Record of Orange county.

On the second of June, 1887, in obedience to the requirements of the Constitution, the Legislature provided such laws as they deemed necessary to carry out and enforce the provisions of section one of Article XIX.

They could not have had in contemplation the violation of Article XIX at the time of the passage of the act creating the Criminal Court in Orange county, because no law had been passed creating the offence. When chapter 3700 was enacted no election on the question of the sale of liquors had taken place in any of the counties where Criminal Courts had been established.

The court must, therefore, conclude that the Legislature, in enacting sections 3 and 4 of chapter 3700, intended to place all counties and citizens on the same footing under Article XIX, and that the right of appeal to the Supreme Court could be had by all citizens alike.

The question then arises, did they have the right under the Constitution to give that right to the citizen, and jurisdiction to the Circuit Court?

Article V, section 11, of the Constitution, reads: The

Circuit Courts shall have original jurisdiction in all cases of equity, also in cases at law not cognizable by inferior courts, and in all cases involving the legality of any tax assessment, or roll; of the action of ejectment, and of all actions involving the titles or boundaries of real estate, and of all criminal causes not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the Legislature may provide.

It is as well to notice what rules should be observed by the court in determining the constitutionality of a statute.

The Supreme Court of Tennessee, in Louisville & Nashville Railroad Company vs. County Court of Davidson, lay down the rule that the constitutionality of legislative acts should be decided with every presumption in favor of their validity, which presumption should be overcome only when the contrary is clear. 62 American Decisions, 425.

In Sherman vs. Burck, 91 American Decisions, the Supreme Court of California say: "It is well understood that the language of the Legislature is to be read in all cases by the light of the Constitution with the spirit of which it is always presumed to be consistent. In construing it, it is the duty of the courts to look to the true object and to trace out the true result and not to be guided by those which the Legislature has mistakenly assumed or declared; and if they be found consistent with the Constitution, or within the acknowledged power of the Legislature, to uphold the act as to its legitimate results and to discard all else."

In Pickering vs. Day, 95 American Decisions, pages 301 and 302, the Delaware Court say: "When the design of the Legislature is not clearly apparent, it is always presumed they intended that the most reasonable and beneficial interpretation should be given to the language which

they have used. If the language is clear and the intent manifest, there is, of course, no room for presumptions. But if, on the other hand, the language is not clear, and it is obvious that by a particular construction in a doubtful case great public interest would be endangered or sacrificed, the court ought not to presume that such construction was intended by the makers of the law."

The question narrows itself down to whether the Legislature have done anything so inconsistent with the Constitution, as to justify the Court in declaring the section unconstitutional in the counties of Orange, Escambia and Duval, and constitutional in all of the other counties of the State.

*Massey & Wilcox and J. Hugh Murphy* for Respondent.

The Constitution, Art. V, Sec. 11, confers on the Circuit Courts, jurisdiction of all criminal cases not cognizable by inferior courts, and Sec. 25 gives jurisdiction to the Criminal Courts of Record of all criminal cases not capital. The Criminal Courts are inferior to the Circuit Courts, under Sec. 11 of Art. V, because they are subject to the revisory powers of the Circuit Courts. Therefore in criminal causes the jurisdiction, where criminal courts exist, is absolutely fixed by the Constitution, and is not subject to the action of the Legislature. When a statute makes an act criminal, the Constitution, by its own force, declares in what court the case shall be tried, according to the terms of the penalty. This being the law, Sec. 4 of chapter 3700, conferring jurisdiction of the local option cases on the Circuit Courts, was entirely unnecessary, and cannot control in counties where criminal courts are established. But granting that it was operative, then it was repealed by chapter 3731, Sec. 1.

The argument that Sec. 2, Art. XIX, providing that

laws shall be passed to enforce that Article, gives power to the Legislature to prescribe other and different jurisdictions of liquor cases than those prrscribed in the Constitution, cannot be sustained.

It is true that Art. XIX was separately voted for and adopted, but it was voted for and ratified as *part* of the Constitution (Ord. No. 2), and being so ratified it is to be construed in harmony with the rest of that instrument. A general expression such as is contained in Art. XIX, Sec. 2, cannot be held to override particular provisions referring to special subjects.

Nor does the fact that in some counties appeals in liquor cases lie into the Circuit Courts, and in others into this court, affect the question. That, at most, is an inconvenience. However desirable uniformity of decision may be, it cannot be made an argument for disregarding plain Constitutional provisions.

The same argument could be made in all misdemeanor cases which fall within the jurisdiction of the Criminal Courts of Record by reason of their establishment.

RANEY, C. J.: These cases are writs of prohibition, and involve the power of the Criminal Court of Record of Orange county to try persons charged with selling liquors in that county, an election having been held on September 22, 1887, to determine whether spirituous, vinous or malt liquors might be sold therein, and a majority of the votes cast at such election being against the sale.

The 24th section of the Judiciary Article of the Constitution provides that there shall be established in the county of Escambia, and, upon application of a majority of the registered voters in such other counties as the Legislature may deem expedient, a Criminal Court of Record. It also prescribes how the judge of the court shall be appointed, as well as his term of office and salary.

The 25th and 29th sections are as follows:

SEC. 25. The said courts shall have jurisdiction of all criminal cases not capital, which shall arise in said counties, respectively.

SEC. 29. The county courts in counties where such criminal courts are established, shall have no criminal jurisdiction and no prosecuting attorney.

By the eleventh section of the same Article the Circuit Courts are given " exclusive original jurisdiction * * * of all criminal cases not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the Legislature may provide." This section also provides that Circuit Courts " shall have final appellate jurisdiction * * * of all misdemeanors tried in criminal courts."

The 5th section of this Article gives the Supreme Court appellate jurisdiction " in cases of conviction of felony in the criminal courts, and in all criminal cases originating in the Circuit Courts."

The 18th section authorizes the Legislature to establish in such counties as it may think proper, county courts which shall have jurisdiction of misdemeanors and other jurisdiction as prescribed by this section, but as no such court has been established in Orange county, and further, as under the 29th section, set out above a county court would, there being a criminal court of record established there, have " no criminal jurisdiction," we see no necessity for saying more concerning such county court's powers.

The Legislature by a statute approved May 31st, 1887, (chapter 3736) p. 108, Laws of Florida of A. D. 1887, established a criminal court of record in and for Orange county and provided (§ 3) that it should have jurisdiction to try and determine all violations of the criminal laws of the State not punished by capital punishment which arise

in the county. Its 16th section is that " all appeals or writs of error prosecuted from the judgment of this court, whether to the Circuit or Supreme Court, shall be prosecuted in the same way and according to the same rules as govern such proceedings from the Circuit Court to the Supreme Court in criminal cases."

At the same session of the Legislature in 1887, an act (chapter 3701) entitled " an act prescribing the jurisdiction and powers, and regulating the proceedings in the Criminal Courts of Record," was passed, and received the Executive's approval on the third day of June. It defines the jurisdiction of such courts in counties where they are established in about the same language as is used in the Orange county act, and its provisions, as to appeals or writs of error, are also about the same.

The plain meaning and effect of the above constitutional and statutory provisions is that a criminal court of record shall have original jurisdiction of all criminal causes not capital arising in the county for which it is established, and that its judgments in cases of misdemeanors shall be subject to the final appellate jurisdiction of the Circuit Court, and in cases of conviction of felony to the appellate jurisdiction of the Supreme Court. The 25th section of the XVIth Article defines a felony as follows :

" The term felony, whenever it may occurr in this Constitution or in the laws of this State, shall be construed to mean any criminal offence punishable with death or imprisonment in the State penitentiary." It is clear that these criminal courts have no jurisdiction of felonies punished by death, but that they have original jurisdiction of all crimes punishable otherwise than by death.

The other constitutional and statutory provisions involved in this controversy are the XIXth, or Local Option article of the Constitution and the statute of 1887, chapter 3700,

approved June 2d, 1887, providing for the enforcement of such article.

The first section of this Article of the Constitution is to the effect that the Board of County Commissioners of each county shall, not oftener than once every two years, upon the application of one-fourth of the registered voters, call and provide for an election in the county to decide whether the sale of intoxicating liquors, wines or beer shall be pro-hibited in the county, the question to be determined by a majority of those voting at the election, which election is to be conducted in the manner prescribed by law for hold-ing general elections. It also provides that intoxicating liquors, either spirituous, vinous or malt, shall not be sold in any election district in which a majority vote was cast against such sale, and makes certain regulations as to the time of holding elections.

The second section of the article is as follows : " The Legislature shall provide necessary laws to carry out and enforce the provisions of " section one of this article.

The act cited above for the enforcement of this article provides, pp. 42, 44, Acts of 1887, for a call of an election by the County Commissioners on proper application and for registration of voters, the mode of conducting the elec-tion and other matters unnecessary to mention. Its third section enacts that any person who shall sell or cause to be sold any liquors, in any county voting against the sale of such liquors therein, contrary to the provisions of the act shall be deemed guilty of a misdemeanor and upon convic-tion shall be fined in a sum not exceeding five hundred dol-lars, or imprisoned in the county jail not exceeding six months, or by both fine and imprisonment.

The fourth section of the act is as follows: "The Circuit Courts of each Circuit in which such counties are situated

shall have jurisdiction in all such offences as described in section 3 of this article."

Relator's counsel contend that the purpose and effect of the second section of this local option article of the Constitution were and are to give power to the Legislature to confer upon the Circuit Courts original jurisdiction of offences under the legislation enforcing it, and that the law makers have done so by the fourth section of chapter 3700 mentioned in the preceding paragraph. Counsel also argues that the intention of the Legislature in making this provision was to place all counties and citizens on the same footing under Article XIX as to the right of an appeal to the Supreme Court. Section 5 of the Judiciary Article does, as indicated above, give the Supreme Court appellate jurisdiction of all criminal cases originating in the Circuit Courts, and of cases of conviction of felony in the criminal courts, and it is clear from the provisions of the Constitution mentioned in this opinion that in any county where neither a criminal court nor a County Court has been established, the Circuit Court has original jurisdiction of any violation of offences against the third section of the local option statute or of any other misdemeanor. It is, however, just as plain, and altogether unquestionable, that the Constitution has given the criminal courts original jurisdiction of all criminal cases, not capital, arising in their respective counties, and given the Supreme Court appellate jurisdiction over its convictions of felony, and the Circuit Court a final appellate jurisdiction over all misdemeanors tried by it. This original jurisdiction of the criminal courts over criminal cases not capital cannot be taken away by the Legislature. The people speaking through the Constitution have said to the Legislature that these courts, whenever established, shall have jurisdiction of all offences to which the law makers shall not have

affixed the death penalty, and whenever the Legis-. lature establishes such a court in any county it does so with notice that the court will exercise this constitutional power, and of what courts its judgments are to be reviewed by. The establishment of this court in any county is the end of any question as to the advisability of committing the review of its decisions in cases other than convictions of felony, to the Circuit Courts. The Legislature can, by making an offence a felony, in the manner prescribed by the Constitution, secure the party who may be convicted of it, an appeal from the Criminal Court to the Supreme Court. If it does not do so, it must be held to have thought it unadvisable. A person convicted of any other misdemeanor in a criminal court is in the same situation as to the tribunal by which such conviction may be reviewed, that a party convicted under the local option statute is in.

Whether or not the legislature can lawfully give the Circuit Courts original jurisdiction concurrently with the Criminal Court, of a case not capital, in a county where there is a Criminal Court of Record, is a question not necessary for us to decide until the former court shall attempt to exercise such questionable jurisdiction in a county where there is a Criminal Court. It has not by its action yet shown any intention to give Circuit Court such original jurisdiction *exclusive* of the Criminal Court.

While it is true that Article XIX of the Constitution was submitted to the people to be voted upon separately from the other articles, yet in the language of the ordinance submitting it, it was "to become *a part of the Constitution* if adopted by a majority of the votes cast upon the question." It is in our judgment as much a part of the Constitution as any other article of that instrument is, and we do not think that its second section gives any more power to change the jurisdiction of constitutional courts

than similar sections or provisions of other articles do. There is, however, nothing in Article XIX or in the act enforcing it that pretends to take away from or to deny to the County Criminal Courts the jurisdiction given them by the Constitution.   A grant of original jurisdiction to one court does not take from another court a previous grant of similar jurisdiction.   Hays vs. McNealy, 16 Fla., 409.

It is contended that the law makers could not when they passed the act establishing the Criminal Court in Orange county have had the violation of Article XIX in contemplation, because it is said, the act enforcing such article had not been passed.   The jurisdiction of the Criminal Court is not confined to offences denounced before its establishment, but extends as well to those of subsequent as to those of previous legislation.

The rule will be discharged and the relators pay the costs.   Judgment will be entered accordingly in each case.